May it please the court and good afternoon. My name is LeVar Taylor and I represent and appearing on behalf of the appellants Jeff and Tamra Yapp. The key issue in the present case is when did the Yapp's business, Real Food Real Life, start for income tax purposes? The Yapps argued below and argued on this appeal that the business started for income tax purposes at the beginning of 2009. The tax court below said it did not start prior to 2011 and the tax court got it wrong. The first issue I'd like to discuss is the standard of review. The Jackson case in the 10th circuit which specifically dealt with a startup cost situation held that this issue is a mixed question of law and fact. When you have a situation where the facts before the trial court are not really in dispute and the trial court drew inferences from the evidence in this and this this circuit's precedent which is the Shea Holmes case didn't involve this startup cost situation but it also affirms the fact that this is a situation where there is a mixed question of law fact review de novo. If you review the tax court's opinion pages 4 through 6 and 14 through 15 the tax court did not say oh I don't believe any of the evidence in front of me. They did not say I don't believe the testimony of the taxpayers. The tax court said I've looked at the evidence and in my view this evidence just is not sufficient to prove that the taxpayers started their business prior to 2011. The tax court pointed to a variety of facts that they thought were significant. They pointed to the February 2011 launch party. They pointed to the first product delivery didn't arrive in their view until late 2010 in December that they looked at the facts and found that the startup phase continued through 2010. I mean I understand that your client's view is that no there's there's plenty of evidence that we were actually commenced before then but the tax court felt that the evidence supported a different conclusion regardless of the standard review. Why is that reversible? It's reversible because of the other evidence not mentioned by the tax court in its opinion. It was in the record that was undisputed. So for example okay the schedule C's on the 2009 and the 2010 tax returns there were schedule C's. That's the reporting vehicle for the reporting the income and expenses from this business. On the schedule C for 2009 there was a small amount of gross receipts. It's very small but still there. There was a product sale. On 2010 schedule C there was about three or four thousand of gross receipts. There were product sales. So you have so you have that evidence in the record. There was other evidence in the record. But counsel is your argument that that evidence compels a finding in your client's favor or is their opinion shows that they erred? Well I don't necessarily view as what your honor said as being mutually exclusive. That evidence in addition to the other evidence that I'll mention does I think compel as a matter of law the conclusion that the taxpayers were quote in where the first activity started in 2009. There's evidence in the record for example where that Tamara Yap sent an email saying oh I'm about ready to finalize the formula for the product. This is in 2008 before the business started in the minds of the taxpayers. So there's activity before 2008. This is not a situation where all of a sudden oh 2009 we're to start a business. The contract with AGM started effective January 1st. Product shipments started in early 2009 and continued through 2009 and 2010. If you go look at the summary of what was shipped annually during 2009 and 2010. Exhibit 213J says that during 2009 over 1500 bottles of liquid from AGM were shipped and over 920 containers of powder from AGM were shipped. During 2009 during 2010 the apps received over 7400 bottles of liquid from AGM and over 3700 containers of powders. You don't receive those unless you're trying to sell something. You don't have gross receipts unless you're trying to sell something and Cabin Taxi which is the 7th circuit case that reversed the tax court's finding that there was no trade or business explicitly holds. You don't need gross receipts to be in business. What about the trademark applications because as the tax court noted you were telling the PTO in 2009 and 2010 that you were engaged in product or service research and development and only in 2011 did you say that you were actually engaged in commerce. Can you address that? The IP attorney testified at trial that in his view what was placed before the trademark authorities had no bearing on that and the reason for that is you can be doing more than one thing at once. In other words we don't dispute that there was experimentation. There was the record clearly shows that but the law the tax law not the IP law the tax law says if you have product or you have the ability to provide product because Cabin Taxi there was no inventory because it was some big train thing that you couldn't put on a shelf or even have in a showroom. If you have the ability to sell and the willingness to sell and you make efforts to promote your product that's all that's required. You don't need a trademark. You can have something that you don't necessarily place in commerce because you haven't finalized it but the tax law is not impairing material with the trademark law. Well sure but it's I mean isn't it at least some evidence that supports the conclusion that you weren't really engaged in selling things in 2009 and 2010 and to add to that I mean isn't that also supported by the evidence that the payment gateway, the web hosting, the business license and liability insurance all started around the same time in early 2011. Well the records there as far as those items are concerned but the client that the apps were receiving product and they were trying to sell it. You can try to sell a product without insurance. You can try to sell a product without a trademark. You can try to sell a product without a business license. I have to confess when I went and left the government and went into private practice it took me a year to discover I needed a business license. That's not outcome determinative. What matters. It's not outcome determinative but the question is are these startup expenses or did the business application actually commence and it may well be as you say that IP law doesn't govern tax law but Judge Miller was accurately reporting what was on the application. The words that were used right. There's no there's no question the words were on application. Yes no and to me that does support the commissioner's view and the tax court's finding that the business operation had not actually commenced until 2011. It doesn't mean that there wasn't some evidence the other way but it just doesn't seem to me that the evidence that you've suggested compels under the tax law as a matter of law of find the business compensed earlier than when the commissioner argued and the tax court found. Well I understand your honor's position. However I would respectfully submit that the case law says that if you can sell you have the ability to sell. There's no legal restriction to sell and there's no practical restriction to sell and you are trying to sell. That's all that's required and the record is replete with efforts by the apps efforts to sell efforts to promote the product during 2009 and 2010 and they got money in 2009 and 2010. And again you don't need a trademark. You don't need you know you don't need insurance and you don't need a promotional event with Justin Timberlake either that's you know premised on a promotion of a product that's completely different from what they were promoting to autistic children. Autistic children don't drink I hope alcoholic beverages with with dietary supplements. Let me briefly then turn to the penalty. This is a case where the outcome is reasonably debatable and under this circuit's authority that means there should be no penalty even if the court this court rules against the apps on the issue of the startup costs. There you can see from the briefs that the cases I call I use the word schizophrenic. You have some cases that say you can be in business before you have a you know rental property ready to rent before you before you have you're able to lease it out. You have case law that says authors can who have not published a book have a trader business before they've even gotten the contract. They're writing their book. They are in a trader business. That is clearly and in this circuit there is no case law whatsoever. And again the authorities say if it's reasonably debatable there should be no penalty. But isn't the debate here really I mean it seems like the disagreement is not really over the legal standard which is you know when did when did you start selling but just a factual question of at what date did that occur. And so if we think that the facts you know support the commissioner's conclusion then what what what really is the reasonably debatable issue here. Well again if if you're saying it's a legal matter that I I'm I'll come back to answer your question in a minute. But there's there's a legal component to this and a factual component to this. And our legal argument is the IP doesn't matter. The Timberlake party doesn't matter. What matters is we had a contract. We have the ability to import product. We had and there was an effort to import product. There was no practical or no law in place that prohibited my clients from going out and selling. And they went out and they promoted they talked to Whole Foods. They went around and talked to doctors. And our argument is that's sufficient. There's no case law out there that deals with that fact that none. And that's why there's a reasonable basis. So I mean what's your response to the tax court's statement that this couldn't be reasonable because the returns were without fully reviewing them and without providing the CPA complete information. We're not arguing here that the that the issue that was decided you know specifically decided by the tax court the tax court said you can't rely on the CPA to get out of the penalty. That's not our argument here. Our argument is a legal one. We don't need to argue that they relied on it. It's should be no penalty. It's a pure legal issue. So that we're not here to argue about whether they reasonably relied on the CPA. We're just not. I'll reserve the remainder of my time for rebuttal. Thank you. All right. Thank you. Ms. Moriarty whenever you're ready. If you've started talking you're still muted. Oh. We can hear you now. Great. May it please the court. I'm Regina Moriarty and I represent the Commissioner of Internal Revenue. As your honors have been discussing the issue with regard to the real food for real life is at what point time did that business begin to operate. And the law is very clear that you cannot get a deduction under 162 until the time that the business has begun to function as a going concern and performed those activities for which it was organized. And as you have just been discussing the tax court here looked to the fact that they didn't have liability insurance or a business license until 2011. They didn't pay commission payments until 2011 to next music for the use of their platform for their sales. They didn't begin to use their trademark. And I put the council brought up the inventory and that's discussed in his reply brief as well. I just wanted to touch on that briefly because I thought it was important. They're trying to say that you know these products of course we were ready. I went back and looked at the seven invoices they described in their reply brief. But over half of those invoices contain notations on them. Notations such as quote samples quote try to create products the powders could go into including bars popsicles brownies bread used to make recipes. One says set powder to the chocolate guy. I don't know what that is. One of the invoices which is located in the excerpts of record at page 9 18 is for 1200 bottles of product on October 5th of 2009. But when you go and look at another document in the record at except excerpts of record at 16 18 it's a summary that the taxpayers prepared a real food real life chronology and it identifies all 1200 of those bottles as samples. These notations let you know that that these products that they were getting weren't for sale. They were used in in trying to develop the products. Mrs. Yap testified how awful these some of these probiotic products tasted and it was her goal to make these palatable so that kids and other people would be willing to buy them to take them. Miss Moriarty what if in the corporate papers it said that the corporate purpose was not just to sell these items but its purpose was also to develop a formula for supplements for example or develop these foods. Uh isn't that what they're doing before 2011? They're just they're developing the product so shouldn't they be able to have ordinary necessary business expenses? No the law is very clear that when you're in the developmental stage you don't get to develop the product deducted expenses you it's only once you've started into an ongoing business. Um well but what if you define your business in your corporate papers as developing them in addition to sell selling them that that doesn't matter to to uh under the tax code? Well you have to have you have to have finished the development whether or not you've actually made a sale as some of the cases point out um isn't the determining factor but you you can't still be in this development and research stage. So a pharmaceutical company that's doing R&R cannot use the the uh cost that R&R as reasonable and necessary business expenses? I think not until that product whatever it is they're developing um I mean I don't really know how a pharmaceutical company set up um but in this case they were working with um real food real life was looking working for what the to get a probiotic that um was powerful that they could sell and that didn't happen um it took them as Mrs. Yap testified years of research and trial and error and it wasn't until 2011 that they felt that their product was was ready to go. What about Mr. Taylor's point that they did report some gross some receipts for 09 and 2010 so maybe they weren't very successful and the sales were modest but doesn't that suggest that they were selling something in those years? Um it's not clear what um the one year it was $200 and the other year was $3,194. It's not clear um what that was but that would just be one factor that the tax court was looking at here. Tax court didn't mention um that specifically I don't believe um but it's when you're looking at um trying to determine when this company started as a going concern there are multiple facts that courts look to and so um in this case the tax court laid out about eight or ten that it believed showed that uh real food real life began in 2011. Whether or not there were minimal sales earlier than that doesn't automatically show um that it was um operating as a going concern earlier than that. Counselor going back for a minute to Judge Murphy's question um there would likely be a difference in the tax approach to a pharmaceutical company that was actively selling 50 products and was doing R&D on product number 51 as opposed to one that was doing R&D on its first product and hadn't sold anything right? Correct but but I still think that a pharmaceutical company needs to um you know if they have a thousand products that they're selling and when they're trying to develop that next product that that the cost involved in that still um are considered research and development costs and they would be covered by 195 not by that um to the extent that they're claiming that they started maybe even in 2008 but certainly by 2009 and we're looking at all the inventory they ordered in that year um when you look at their tax returns the schedule c which is the profit and loss uh for the businesses there's a line on that form um it's a it's box h and it says if you started or acquired this business for 2009 it said 2009 for 2010 it's at 2010 it says check here and for 2009 there's no check in that box but there is a box a check in the box on the 2010 return indicating that when taxpayers file their returns in 2010 they believe they started in that year and not earlier of course it's the commissioner's position here that that uh real food real life began at the earliest in 2011 based on all the um factors that that we argued below and that the tax court um used in its opinion for holding that that the business hadn't started yet um and i think all of those those factual determinations are very persuasive um that that they were still in the developmental stage um trying to to figure out what the best product was that that they could sell um i'm sorry did did you say the box h on schedule c for the 2010 return is checked it is checked and what because i i have a copy of that on 461 of the er uh page 463 of the er 463 i see okay it's line h got it okay thank you okay uh let's see i guess the um the penalty the accuracy penalty um i would like to point out that in the tax court below um prior to the opinion coming out um when you go back and look at taxpayers opening and answering briefs um the only um reason they argued that they weren't liable for the penalty was because they relied on a tpa and that's and that's why that that's why that's what the tax court discussed in the opinion yes correct and so it wasn't until they filed their motion for reconsideration that they brought up this reasonably debatable um argument that they have um and so i i guess my first point would be that it's not really not a proper place when you're dealing with motions for reconsideration you can't raise a new argument that you hadn't raised below um and yeah so did you are did you argue waiver in in your answering brief um i don't think i did no i don't think you did either okay well then the next reason was to the extent that they're claiming that that these startup costs it's reasonably debatable and therefore the penalty penalty shouldn't apply that they're just wrong um the law has settled for decades as to when a taxpayer is engaged in a trader business or or when they begin to function as a going concern um the legal standard to determine when a business commenced is clear and the only question here was whether real food real life met that standard um taxpayers arguments in the tax court in finding that they didn't start operating as a business do not implicate any unsettled legal issue or involve a question in first impression the evolved the alleged novelty of the facts in this case don't negate the fact that the underlying tax principles involved are well settled and therefore they didn't have a reasonably debatable position that justifies abatement of the penalty um would the court like me to discuss the standard review or um the wages issue which i think are pretty well covered in our brief i i i don't have a question on the wages issue but why don't you discuss uh the standard of review in your view on the startup issue okay um i think to me it seems that particularly with the both the real food real life um business expenses and of course the wages expenses they're both factual questions um the sixth circuit case we cited in our brief bras versus commissioner was exactly um involving winning taxpayers carrying on a trader business and it found that the standard review was for clear air um i also would would um cited by the tax court and um in our brief um with the case of konig versus commissioner a case that i personally handled over 20 years ago and although it's in an unpublished opinion this court too held that the standard review there was clearly erroneous for when a individual was starting his artifact business but even why why does that make sense i mean obviously there are some findings of you know historical fact like what was the date of the first sale you know what did the trademark application say or not say those are all are facts but uh it seems like the ultimate conclusion of you know at what point does this collection of historical fact add up to something that will be deemed a going concern seems to be sort of bound up with a legal question so um why uh why isn't that at least a mixed question of law or fact well i think that even if you wanted to view it as a mixed question of law or fact as the jackson case cited by taxpayers do um the jackson case relied on another 10th circuit case called love box and that love case relied on a ninth circuit case united states versus mcconnie which is at 728 fed sec and 1195 it's a 1984 case and um it discussed when you're looking at a mixed question if the issue tends to be more factually based and concerns factors more appropriate decided by a trial court then you look to the clearly erroneous standard so the court took a functional approach there and i would say that that's what applies here because you have to look at any number of facts to determine what it was these taxpayers were doing in terms of trying to get their business off the ground and and you know with each different type of business those factors are going to change but that's going to be a factual question particularly uh where the law has been settled here for for 50 years um if you go back to the very good opinion from the fourth circuit in richmond television i believe it's called um detailing what is what when a business starts and so then you're just looking to the facts of each individual case and that is why you would apply a clearly erroneous standard even if you were going to look toward a mixed question that this court seems to indicate that you apply this functional approach so are there any other further questions no okay then um we'd ask that the um tax court opinion be affirmed okay thank you counsel mr uh tail yes your honor um i'm going to address judge bennett your comment about when you have a pharmaceutical doing company doing more than two things one thing that's what happened here there was a contract this is the eight contract of 866 of the excerpts of record they were doing two things they were importing agm product directly and selling it and they were developing their own product they did not receive their their own developed product until july of 2009 but they were selling agm that was clearly it had to have been their first sale of 200 or so in in 2009 that's enough to get them in the door okay there are two things going on here just read the contract so we're not limited to that so we're so from our standpoint there are multiple things to check the box on 2010 i'm aware of that there's a reason why we're not arguing reliance on the cpa checking the box is one of them um however we'll take 2010 if the court doesn't this court doesn't believe that this was sufficient in 2009 we'll take 2010 there's no absolutely no reason why the court can't if it believes it started in 2010 but not 2009 can reverse the tax court as to that um so uh the testimony of the trial level was that the apps didn't review the return they obviously did not see that the box was checked and obviously the cpa who checks a bot who prepares the 0 9 and 10 return to schedule c's for the same business and says that i'm we understand that all right thank you counsel uh we thank both counsel for their helpful arguments this case is submitted and with that we are adjourned for the day thank you
judges: Murphy, Bennett, Miller